**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JAMAR PINKNEY, Sr.,

      Petitioner,

v.                             Case No. 15-CV-12721

THOMAS WINN,

      Respondent.

_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS**
**AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

      Petitioner Jamar Pinkney, Sr., incarcerated at the Handlon Correctional Facility in

Ionia, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. §

2254.  In his application, Petitioner challenges his conviction of second-degree murder,[1]

felonious assault,[2] and felony-firearm.[3]  For the reasons that follow, the petition for writ

of habeas corpus will be denied.

## I.  BACKGROUND

      Petitioner was originally charged with first-degree premeditated murder, several

counts of felonious assault, and felony-firearm, but a jury in the Wayne County Circuit

Court convicted him of the lesser included offense of second-degree murder on the first-

degree murder charge; he was found guilty as charged of the remaining offenses. This

court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals,

_____

    [1]  Mich. Comp. Laws § 750.317; Mich. Stat. Ann. 28.549.       .

    [2]   Mich. Comp. Laws § 750.82; Mich. Stat. Ann. 28.277.

    [3]  Mich. Comp. Laws § 750.227b; Mich. Stat. Ann. 28.424(2).

which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). See

*Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> This case involves the shooting death of JP, who was the 15–year–old son of defendant and Lazette Cherry. JP admitted to his family that he had sexually abused his younger half-sister, defendant's daughter. Defendant first learned about this during a phone conversation in the middle of the night. The next morning, defendant went over to the duplex house where JP and Lazette were located. After JP admitted the sexual abuse to defendant in person, defendant started beating on JP.
>
> Yolanda Cherry, who is Lazette's sister, and LaTonya Prather were in the upstairs portion of the duplex, while defendant, Lazette, and JP were in the downstairs portion. When defendant started to beat JP, Yolanda and Prather both heard the commotion coming from downstairs and both went down to investigate, with Yolanda quickly heading down first. Because the units were in a duplex, they had to walk down, exit outside, and then enter the front door of the downstairs unit.
>
> Yolanda was first to enter the downstairs unit, and she saw defendant beating on JP. Yolanda moved in and pushed defendant away from JP. It is not clear from the record which way people were facing and where everyone was located with respect to the front door at this point. Regardless, Prather testified that when she entered the downstairs unit, Yolanda was shoving defendant. Prather also testified that in response to being shoved by Yolanda, defendant pulled a gun and pointed it first at Yolanda and then later at Lazette, while issuing threats to the both of them. When asked where she was when defendant pointed the gun at the other two women, Prather stated that she was "to the right of [defendant], but in back of him." Yolanda testified that after defendant pulled the gun, she raised her hands and started backing away from defendant toward the front door and that defendant then resumed his attack on JP.
>
> After Yolanda and Prather left, defendant forced JP to strip, forced him outside to a nearby field, and shot him in the head. Defendant did not deny shooting JP, but claimed that he became enraged after JP disclosed the sexual abuse and shot JP in the heat of passion and, therefore, was only guilty of voluntary manslaughter. Defendant denied threatening any other individuals.

*People v. Pinkney*, No. 300214, 2012 WL 5857292, at * 1 (Mich. Ct. App. Nov. 15, 2012).

The Michigan Court of Appeals vacated one of Petitioner's felonious assault convictions but affirmed his remaining convictions. *Id.* On April 29, 2013, the Michigan Supreme Court denied Petitioner leave to appeal. *People v. Pinkney*, 829 N.W.2d 231 (Mich. 2013).

Petitioner filed a post-conviction motion for relief from judgment, which was denied. *People v. Pinkney*, No. 09-029531-01 (Wayne Cty.Cir. Ct. Sep. 22, 2014). The Michigan appellate courts denied Petitioner leave to appeal. No. 323932 (Mich.Ct.App. Oct. 30, 2014); *leave to appeal denied at* 866 N.W. 2d 423 (Mich. 2015).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Mr. Pinkney must be resentenced because he was sentenced based on facts not found by the jury beyond a reasonable doubt in violation of his federal constitutional rights to have all elements of the crimes with which he was charged be decided by an impartial jury.

II. Mr. Pinkney was denied his constitutional right to have a properly instructed jury determine whether he was guilty of second-degree murder because the trial court failed to instruct the jury that it could infer that the content of the missing 911 tapes would have been adverse to the government.

III. Mr. Pinkney was denied the effective assistance of trial counsel because his trial counsel failed to follow up on obtaining a critical piece of evidence, and because his trial counsel neglected to retain an expert witness who could present evidence of Mr. Pinkney's mental state at the time of the shooting, and this was conduct that does not constitute the objectively reasonable performance to which Mr. Pinkney was entitled.

IV. Mr. Pinkney was denied his right to access potentially exculpatory evidence when, after having been requested to do so, the government did not acquire and provide copies to Mr. Pinkney of the calls made to 911 on the morning of Mr. Pinkney's son's death.

## II. STANDARD

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766,

4

773 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per curiam*)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)).  Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

   "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 562 U.S. at 102.  Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.*  Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102-03 (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979)) (Stevens, J., concurring in judgment)).  Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that

state courts know and follow the law." *Woodford,* 537 U.S. at 24. Therefore, in order to

obtain habeas relief in federal court, a state prisoner is required to show that the state

court's rejection of his claim "was so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded

disagreement." *Harrington,* 562 U.S. at 103.

### III. DISCUSSION

### A. Claim # 1: The Sentencing Claim

Petitioner first contends that the trial court judge violated his Sixth Amendment

right to a trial by jury by using factors that had not been submitted to a jury and proven

beyond a reasonable doubt or admitted to by Petitioner when scoring several offense

variables under the Michigan Sentencing Guidelines.[4]

On June 17, 2013, the United States Supreme Court ruled that any fact that

increases the mandatory minimum sentence for a crime is an element of the criminal

offense that must be proven beyond a reasonable doubt. *See Alleyne v. United States*,

133 S. Ct. 2151, 2155 ( 2013). *Alleyne* is an extension of the Supreme Court's

holdings in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*,

542 U.S. 296 (2004), in which the United States Supreme Court held that any fact that

---

[4] Respondent argues that several of Petitioner's claims are procedurally
defaulted for various reasons. "[F]ederal courts are not required to address a
procedural-default issue before deciding against the petitioner on the merits." *Hudson v.
Jones*, 351 F. 3d 212, 215 (6th Cir. 2003)(citing *Lambrix v. Singletary*, 520 U.S. 518,
525 (1997)). "Judicial economy might counsel giving the [other] question priority, for
example, if it were easily resolvable against the habeas petitioner, whereas the
procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at
525. In this case, the court finds that the interests of judicial economy are best served
by addressing the merits of these claims.

increases or enhances a penalty for a crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt. In reaching this conclusion, the Supreme Court overruled *Harris v. United States*, 536 U.S. 545 (2002), in which the Supreme Court had held that only factors that increase the maximum, as opposed to the minimum, sentence must be proven beyond a reasonable doubt to a factfinder. *Alleyne,* 133 S. Ct. at 2157-58.

At the time of Petitioner's conviction and sentence, *Harris* was good law.  In addition, *Alleyne* has not been made retroactive to cases on collateral review. *See In re Mazzio*, 756 F.3d 487, 489-90 (6th Cir. 2014).  Because the Supreme Court at the time of Petitioner's conviction did not require that facts which increase a criminal defendant's minimum sentence be proven beyond a reasonable doubt, Petitioner is not entitled to habeas relief on his claim. *See Gibson v. Tribley*, No. 10-13364, 2013 WL 3353905, at * 8 (E.D. Mich. July 3, 2013)*.* [5]

Moreover, *Alleyne* is inapplicable to Petitioner's case, because the Supreme Court's holding in "*Alleyne* dealt with judge-found facts that raised the mandatory minimum sentence under a statute, not judge-found facts that trigger an increased guidelines range," which is what happened to Petitioner in this case. *See United States v. Cooper*, 739 F.3d 873, 884 (6th Cir. 2014); *see also United States v. James*, 575 Fed. App'x. 588, 595 (6th Cir. 2014) (collecting cases and noting that at least four

---

[5]  Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock,* 666 N.W. 2d 231, 237, n. 7 (2003)(citing Mich. Comp. Laws § 769.34(2)).  The maximum sentence is not determined by the trial judge but is set by law. See *People v. Claypool,* 684 N.W. 2d 278, 286, n. 14 (2004)(citing Mich. Comp. Laws § 769.8)).

post-*Alleyne* unanimous panels of the Sixth Circuit haved "taken for granted that the
rule of *Alleyne* applies only to mandatory minimum sentences."); *Saccoccia v. Farley*,
573 Fed. App'x. 483, 485 (6th Cir. 2014)("But *Alleyne* held only that 'facts that increase
a mandatory statutory minimum [are] part of the substantive offense.'. . . It said nothing
about guidelines sentencing factors.").  The Sixth Circuit, in fact, has ruled that *Alleyne*
did not decide the question whether judicial factfinding under Michigan's indeterminate
sentencing scheme violates the Sixth Amendment. *See Kittka v. Franks*, 539 Fed.
App'x. 668, 673 (6th Cir. 2013).

The court is aware that the Michigan Supreme Court recently relied on the
*Alleyne* decision in holding that Michigan's Sentencing Guidelines scheme violates the
Sixth Amendment right to a jury trial. *See People v. Lockridge*, 870 N.W.2d 502 (Mich.
2015).  Petitioner, however, cannot rely on *Lockridge* to obtain relief with this court.
The AEDPA standard of review found in 28 U.S.C. § 2254 (d)(1) prohibits the use of
lower court decisions in determining whether the state court decision is contrary to, or
an unreasonable application of, clearly established federal law. *See Miller v. Straub,*
299 F. 3d 570, 578-579 (6th Cir. 2002).  "The Michigan Supreme Court's decision in
*Lockridge* does not render the result 'clearly established' for purposes of habeas
review." *Haller v. Campbell*, No. 1:16-CV-206, 2016 WL 1068744, at * 5 (W.D. Mich.
Mar. 18, 2016).  In light of the fact that the Sixth Circuit has ruled that *Alleyne* does not
apply to sentencing guidelines factors, reasonable jurists, at a minimum, could
disagree about whether *Alleyne* applies to the calculation of Michigan's minimum
sentencing guidelines. *Id.* at * 6.  "*Alleyne* therefore did not clearly establish the
unconstitutionality of the Michigan sentencing scheme and cannot form the basis for

8

habeas corpus relief." *Id.; See also Perez v. Rivard,* No. 2:14-CV-12326, 2015 WL
3620426, at * 12 (E.D. Mich. June 9, 2015) (petitioner not entitled to habeas relief on
claim that his sentencing guidelines scored in violation of *Alleyne*).  Petitioner is not
entitled to relief on his first claim.

### B.  Claim # 2: The Jury Instruction Claim

Petitioner next contends that the judge violated his right to due process by
refusing to give the jurors an adverse inference instruction with respect to tapes of the
911 calls made by the victim's family members which had not been preserved for trial.

In a direct appeal, the burden is substantial when attempting to demonstrate that
an erroneous instruction was so prejudicial as to implicate the constitutional validity of a
conviction; the burden in attempting to support a collateral attack by such means is
even greater.  The question in a collateral proceeding is whether the instruction so
infected the entire trial that the resulting conviction violates due process, not merely
whether the instruction is undesirable, erroneous, or even "universally condemned." An
omission or an incomplete instruction is even less likely to be prejudicial than a overt
misstatement of the law. *Henderson v. Kibbee*, 431 U.S. 145, 154-155 (1977).  Further,
any ambiguity, inconsistency or deficiency in a jury instruction does not by itself
necessarily constitute a due process violation. *Waddington v. Sarausad*, 559 U.S. 179,
190 (2009).  It is not enough that there might be some "slight possibility" that the jury
misapplied the instruction. *Id.* at 191.  Federal habeas courts do not grant relief, as
might a state appellate court, simply because a jury instruction may have been
deficient in comparison to a model state instruction. *Estelle v. McGuire*, 502 U.S. 62,
72 (1991).

As discussed when addressing Petitioner's fourth claim, *infra,* there was no showing by Petitioner in the state courts or before this court that the police acted in bad faith by failing to preserve the 911 tapes.  Under Michigan law, only if the trial court judge first determined that the police or prosecutor acted in bad faith in destroying the evidence would Petitioner be entitled to have the jury instructed that it may infer that the missing evidence would have been favorable to the defendant. *See People v. Cress,* 646 N.W. 2d 469, 694 and n. 27 (2002); *reversed on other grds* 664 N.W. 2d 174 (Mich. 2003).

There was no showing that this evidence was destroyed in bad faith. A spoliation, or adverse inference instruction, "usually makes sense only where the evidence permits a finding of bad faith destruction; ordinarily, negligent destruction would not support the logical inference that the evidence was favorable to the defendant." *United States v. Laurent*, 607 F. 3d 895, 902 (1st Cir. 2010).  Moreover, a spoliation instruction, allowing an adverse inference, "must make sense in the context of the evidence."  *Id.* at 903.  The routine destruction of the 911 tapes by recording over them with new emergency calls creates no inference that the evidence was destroyed because it contained evidence favorable to Petitioner. *Id.*

In this case, because there was no evidence that the police acted in bad faith when they failed to preserve the 911 tapes, the failure to give an adverse inference instruction did not deprive Petitioner of a fair trial.  *See United States v. Boxley,* 373 F. 3d 759, 762-63 (6th Cir. 2004).  Petitioner is not entitled to relief on his second claim.

### C.  Claim # 3:  The Ineffective Assistance of Counsel Claims.

Petitioner claims he was denied the effective assistance of trial counsel.

10

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-prong test. First, he must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, he must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, he must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, there must be shown "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 562 U.S. at 112). The Supreme Court's holding in *Strickland* places the burden on the petitioner who raises a claim of ineffective assistance of counsel. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether

11

defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. at 101.  Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664).  Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.*  This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."*Harrington*, 562 U.S. at 101.  "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

Because of this doubly deferential standard, the Supreme Court has indicated that:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 562 U.S. at 105.

In addition, a reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Cullen v. Pinholster,* 563 U.S. 170, 196 (2011).

Finally, the court is to bear in mind that "reliance on 'the harsh light of hindsight' to cast doubt on a trial that took place" years ago "is precisely what *Strickland* and

12

AEDPA seek to prevent." *Harrington v. Richter*, 562 U.S. at 107.

Petitioner first claims that trial counsel was ineffective for failing to follow through with his request for the preservation and production of the 911 tapes. Petitioner claims that these tapes would have established that there was only a 77 second time span from the time that Petitioner began hitting his son until he shot him. Petitioner argues that the brief time lapse between the two 911 calls would have proven that he acted in the heat of passion when he shot his son and was thus guilty only of the lesser offense of voluntary manslaughter.

Petitioner cannot show that he was prejudiced by counsel's failure to preserve or produce the 911 tapes to establish the timeline of the shooting. Trial counsel presented evidence of the printout of the 911 calls at trial. The 911 operator, Shawnten Jeffries, testified concerning the accuracy of the 911 printout, which showed the first call made at 1:20 p.m., when Petitioner was waiving his gun and threatening the women and a second call from 1:21 p.m., which indicated that a man had been shot in the head. (Tr. 3/30/10, pp. 195-98, 208-12). Defense counsel obtained an admission from Ms. Jeffries that there was a one minute, seventeen second gap between the calls. (*Id.,* p. 212).

Petitioner was not prejudiced by counsel's failure to preserve and present the actual 911 calls, because this evidence was cumulative of other evidence presented at trial in support of Petitioner's claim that he shot the victim in the heat of passion, namely Ms. Jeffries' testimony concerning the time between the two calls. *Wong,* 558 U.S. at 22-23; *See also United States v. Pierce,* 62 F. 3d 818, 833 (6th Cir. 1995); *Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 607 (E.D. Mich. 2001). In this case, the

13

jury heard evidence through the 911 operator's testimony that 77 seconds elapsed between the two 911 calls, to support Petitioner's claim that he shot the victim before he could regain control of his emotions.  Because the jury was "well acquainted" with evidence that would have supported Petitioner's claim that he shot the victim while in the heat of passion, additional evidence in support of Petitioner's defense "would have offered an insignificant benefit, if any at all." *Wong,* 558 U.S. at 23.

Petitioner next claims that counsel was ineffective for failing to call Dr. Gerald Shiener as an expert witness to testify to Petitioner's state of mind during the 77 seconds between the first 911 call and when Petitioner shot the victim.

Petitioner is not entitled to relief for several reasons.  First, as the Michigan Court of Appeals noted in rejecting Petitioner's claim, there was never any finding made by either Dr. Shiener or Dr. Steven Miller, the independent forensic psychologist appointed to evaluate Petitioner, that Petitioner was legally insane at the time of the shooting. *People v. Pinkney*, No. 300214, 2012 WL 5857292, at * 6.  A habeas petitioner's claim that trial counsel was ineffective for failing to call an expert witness cannot be based on speculation. *See Keith v. Mitchell,* 455 F. 3d 662, 672 (6th Cir. 2006).  Petitioner has offered no evidence to this court that Dr. Shiener or any other expert would testify that Petitioner was legally insane at the time of the shooting. Petitioner is thus not entitled to relief on this claim.

To the extent that Petitioner claims that Dr. Shiener or another doctor should have been called as an expert to support a diminished capacity defense, he would not be entitled to relief.

In 1994, the Michigan legislature enacted Mich. Comp. Laws § 768.21a, which

14

set forth the legal standards for an insanity defense in Michigan.  The Michigan

Supreme Court has subsequently held that this statute abolished the diminished

capacity defense in Michigan, and that the insanity defense, as established by the

Michigan Legislature in § 768.21a, was the sole standard for determining criminal

responsibility as it relates to mental illness or retardation. *See People v. Carpenter,* 627

N.W. 2d 276, 283-85 (Mich. 2001); *See also Wallace v. Smith,* 58 Fed. App'x. 89, 94,

n. 6. (6th Cir. 2003).  Because Michigan no longer recognizes a diminished capacity

defense, Petitioner is unable to show that counsel was ineffective in failing to pursue

such a defense on Petitioner's behalf. *See e.g. Nields v. Bradshaw,* 482 F. 3d 442, 456

(6th Cir. 2007).  Petitioner is not entitled to habeas relief on his third claim.

### D. Claim # 4; The Destruction of Evidence Claim

Petitioner argues that he was denied due process by the prosecutor's failure to

preserve the recordings of the 911 calls made by witnesses during the incident.

To prevail on his claim, petitioner must show (1) that the state withheld

exculpatory evidence and (2) that the evidence was material either to guilt or to

punishment irrespective of good faith or bad faith of the prosecution. *Brady v.

Maryland,* 373 U.S. 83, 87 (1963).  Evidence is material only if there is a reasonable

probability that, had the evidence been disclosed to the defense, the result of the

proceeding would have been different.  A "reasonable probability is a probability

sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S.

667, 683 (1985).  The *Brady* rule extends to evidence that is not suppressed but is

altered or destroyed. *See California v. Trombetta,* 467 U.S. 479, 489 (1984).  For such

evidence to meet the standard of constitutional materiality, it "must both possess an

15

exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 488-89.

However, the failure of police to preserve evidence that is only potentially useful for a defendant is not a denial of due process of law unless the defendant can show bad faith on the part of police. *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988). When the state fails to preserve evidentiary material "of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant," a defendant must show: (1) that the government acted in bad faith in failing to preserve the evidence; (2) that the exculpatory value of the evidence was apparent before its destruction; and (3) that the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other means. *Monzo v. Edwards,* 281 F. 3d 568, 580 (6th Cir. 2002).  A habeas petitioner has the burden of establishing that the police acted in bad faith in failing to preserve potentially exculpatory evidence. *See Malcum v. Burt,* 276 F. Supp. 2d 664, 683 (E.D. Mich. 2003)(internal citations omitted).  The mere fact that the police had control over evidence and failed to preserve it is insufficient, by itself, to establish bad faith, nor will bad faith be found in the government's negligent failure to preserve potentially exculpatory evidence. *Id.*  "The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Youngblood,* 488 U.S. at 56.

16

Petitioner's claim fails because his contention that the 911 tapes contained exculpatory material is entirely speculative. *See United States v. Jobson,* 102 F. 3d 214, 219 (6th Cir. 1996).  "Where '[t]here is no indication that there was anything exculpatory' about destroyed evidence, due process has not been violated." *Id.,* (quoting *United States v. Braggs*, 23 F.3d 1047, 1051 (6th Cir. 1994)).

Petitioner's claim also fails because he has not shown that the police acted in bad faith when they reused the tape and recorded over the 911 calls.  Petitioner's conclusory allegations regarding the alleged destruction of potentially exculpatory material fail to establish that the police, in bad faith, destroyed any evidence with knowledge of its exculpatory value. *See Malcum,* 276 F. Supp. 2d at 683.

Finally, at trial, defense counsel cross-examined the 911 operator about the 77 second gap between the first 911 call and the second 911 call, in support of his claim that he shot the victim while in the heat of passion.  In light of the fact that the same information about the interlude between the phone calls from the 911 tapes came from a witness, Petitioner is unable to establish that the destruction of these tapes deprived petitioner of his due process right to a fair trial. *See Bowling v. Parker,* 138 F. Supp. 2d 821, 885 (E.D. Ky. 2001).

### E.  A Certificate of Appealability

Before Petitioner may appeal this decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); Fed. R.App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a court denies a habeas

17

claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. See *Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. at 327.  In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merits of the claim. *Id.* at 336–37.

Having considered the matter, the court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right as to his habeas claims. Accordingly, the Court will deny Petitioner a certificate of appealability.

## IV. CONCLUSION

IT IS ORDERED that Petitioner Jamar Pinkney, Sr.'s petition for writ of habeas corpus [Dkt. # 1] is DENIED.

This court DECLINES to issue a certificate of appealability.

 S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

18

Dated:  August 31, 2016


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 31, 2016, by electronic and/or ordinary mail.

 S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522
